My name is Howard Moore, Jr. I represent the appellate, Lillia Extrom-Stanley. This is an appeal from a judgment from the Northern District of California in which the court granted a Rule 12b-1 motion to dismiss for want of subject matter jurisdiction. Since the case was fully briefed and the court requested letter briefs, the government has now conceded that the district court had subject matter jurisdiction. It would remain, however, notwithstanding the concession and the agreement of the parties that the court did have subject matter jurisdiction in this case, that the court, this court, has to make its own decision as to whether or not the district court had subject matter jurisdiction. We would submit that the court should consider first the view of the parties and, of course, the decision. Kennedy Subject matter jurisdiction to do what? Gonzales Subject matter jurisdiction to entertain a complaint for declaratory judgment in which there is a colorable constitutional claim. Kennedy There is a colorable constitutional claim. Kennedy What is your colorable constitutional claim? Gonzales Well, the colorable constitutional claim is that Ms. Stanley was deprived of her property interest in her job without due process of law. And the colorable constitutional claim that the decision to remove her from her position violates the separation of powers doctrine. Now, having stated what those colorable constitutional claims are, it would not be appropriate, I submit, on this appeal for this court to determine whether or not there are colorable constitutional claims. Kagan Isn't it really inextricably mixed with the determination of jurisdiction? Gonzales Well, it may be mixed, but it's not a question, Your Honor, which should be determined in the first instance for a number of reasons. One is the belatedly raised claim by the government on appeal. Ordinarily, the court does not hear for the first time claims raised on appeal. Secondly, there's an argument that the government waived the 12B6 argument as to the sufficiency of the complaint to state a claim for relief, but not raising it in the district court. And we would submit that under well-known jurisprudence in this court that the court would not entertain the 12B6 suggestion by the government as to whether or not the complaint states a claim for which relief should be granted. Kagan Well, let's just take the question of the separation of powers argument. You argued that in your brief, correct? Gonzales Yes. Kagan And you laid out why you think that there's an appointments clause breach here. And if we had to determine if there were jurisdiction, we would need to determine whether there was a colorable constitutional claim. And if we were to determine that there's no suggestion that she's a principal officer, why couldn't we determine as to the separation of powers argument that there's no colorable constitutional claim? Gonzales Well, I would submit that there is a colorable constitutional claim with respect to separation of powers, because what you have here, what you have, you have a congressional grant by statute to the United States Bank Representative Trustee to serve a fixed term for five years. Ms. Stanley was removed from her office, not for any personal wrongdoing. Kennedy Is that the only statute that's relevant? Is that the only statute that's relevant to the length of her service or term? Gonzales There's only one statute that's subparts of that statute. That's 581 of 28 United States Code. There's section A, B, and C of that particular code. Kagan Why wouldn't, on that point, hasn't the Federal Circuit already made a determination on that point? Gonzales Well, that determination isn't binding in this Court. She can't be collaterally estopped, because the Federal and the Merit System Protection Board didn't have jurisdiction. And you cannot apply a collateral estoppel in any case unless there has been a demonstrated showing that the party to be estopped has had a full and fair opportunity, opportunity I stress, to present the issue. And given the jurisdiction, the limitations on the jurisdiction of the Merit System Protection Board and the corresponding limitation on the jurisdiction of the Federal Circuit Court of Appeals, collateral estoppel would not be appropriate. Kagan They're simply determining whether the Merit Systems Protection Board had jurisdiction over her case. Is that correct?  Although their analysis, I assume that because in their, in the course of doing that, even if it's not viewed as some kind of collateral estoppel, they lay out a rationale that directly implicates your claims. But I guess you just disagree with it. You wouldn't want us to adopt the same rationale in other words. Well, certainly I wouldn't want you to adopt the same rationale. I think it would be inappropriate. But if the court would admit to it. It wouldn't be inappropriate if it were legally correct, would it? Well, it may not be correct. But may I go back to make this, to speak about the separation of powers? And the point I'd like to make is that the statute gives the bank U.S. trustee a five-year term. The attorney general, by discharging her for what could be nothing but political reasons, due to change in the presidential administration, converts the fixed term into an at-will term. Isn't that what subsection C says? The subsection C only says that the attorney general may remove a trustee. Right. Correct. And that's what he did or she did. It doesn't say that the attorney general may remove a trustee for political reasons. Well, it doesn't say it has to be for cause, does it? It doesn't say it has to be for cause. But it doesn't say that the attorney general may remove a trustee for political reasons. There doesn't seem to be any restriction on the removal part. It just says, you know, subject to removal. Well, that's what it says. It doesn't say for A, B, or C. This is for a court like this court to consider looking at the interests which are involved. The U.S. bank trustee has been recognized as the person exercising quasi-judicial immunity because the trustee owes duties not just to the administration but to the public at large to conduct the office of trusteeship. Well, so does a U.S. attorney. Well, that's different. I'm an immigration judge. A U.S. attorney is different. A U.S. attorney is appointed. Because the U.S. attorney only has a four-year term. No, it's different. It's a very important difference. A U.S. attorney is appointed by the President with the Senate, with the consent of the Senate. But still subject to removal, right? Any political appointee is subject to removal. But the trustee, the United States trustee, is appointed by the attorney general. And the attorney general is exercising the appointing power given him under the statute. It's exercising power delegated to him by Congress because Congress has determined that there should be a United States trustee. And in order to create a mechanism to appoint the trustee, because Congress doesn't appoint inferior officers, even though it's given that constitutional power under the Constitution, it delegates the department head to do so. And so there's a difference. There's a fundamental difference between a political appointee and an appointee of the President and an appointee by the attorney general, the department head. I'm having trouble understanding what the foundation for the separation of powers argument is. We have a statute that has now been, was amended some time ago that kind of just sets out there the attorney general's power in pretty naked terms, like it or not. What, what, what is, where does that violate the separation of powers? The intent of the statute, Section 581B, is to give the U.S. trustee term protection. That's why the term, the five-year term, is not coterminous with the service of a president as such. And what happens through the exercise, the unrestrained exercise of the power removal given the attorney general under Section 581C, the term protection that's given to the trustee is taken away. And the trustee now serves at the pleasure of the attorney general, or at will. And so what the attorney general has adroitly done by the exercise of his power under Section 581C, is convert the position of U.S. trustee to one at will for political reasons, when there's nothing in the statute that says that a U.S. trustee is to be appointed for political reasons, nor is there anything in the statute that says that the trustee is to be removed for political reasons. Ginsburg. Basically, it says Congress said that there's the trustees are, I think, quote, subject to removal by the attorney general, end quote. So it is a pretty broad. I mean, what you would like us to do is to have a comma except for political purposes. We would have to insert into the statute. Well, that's all that you're doing. That's all that you would be doing in this case is saying that you can't discharge a U.S. trustee for political reasons. That's the constitutional issue in this case. Right. But I understand the issue. I'm having trouble finding the source, the legal source, to impute those words into the statute. Well. So in other words, is the statute, let's just start with the basic statute. Do you think the statute is ambiguous in any way? The statute is silent. It's a different question. Is it ambiguous? In its silence, it's not ambiguous in its silence because it's silent on the question as to whether or not there should be cause for removal. But the statute, 581, has to be read in conjunction with 581B. And you can't read one part of the statute to give an effect to that part of the statute and not give effect to the other part of the statute because what are you trying to do? What are you trying to do? Are you trying to protect the integrity of the office of a United States trustee or not? And this Court has already spoken, addressed the question of what a United States trustee is in violence against the Department of Justice. And given the importance of a United States trustee to the operation of the bankruptcy system, it's important that the United States bankruptcy trustee not be removed for political purposes. Do you think there is something between removal for malfeasance and political purposes? I mean, there's a continuum, correct? I would definitely think so because in this case, what you have is clear removal for political purposes. It says due to a change in presidential administration. So let me ask you this. Let's say the Attorney General says, you know, we've really administratively kind of like to reorganize things, and I think some of these districts don't really need a whole trustee, and we're going to have kind of cross-trustees, so you're gone, and I'm going to have this woman cover two districts because administratively this makes more sense to me. So trustee number one is removed. Would that be permitted under your view of the statute? It certainly would be permitted because it's not a removal due to change of presidential administration. But the person had their job for five years. They just got kicked out. That's a different question, Your Honor. Well, okay. So now you're going to ask me. Because it's a different question. It's different in this regard. Because the ‑‑ on the surface and without much to penetrate the surface articulation, the trustee in your example would be removed for the efficiency of the service. Correct. But in the case before you, the trustee is removed regardless of whether it's the good or the service or not, but for political reasons. Well, but see, that's what I'm trying to ‑‑ okay, so now it's none of ‑‑ you can be removed for malfeasance. You can be removed for administrative purposes. Could you be removed for whim that wasn't political whim? You might be. So, in other words, I just don't like her, the Attorney General says. It's nothing political as far as I'm concerned. I just don't like her and I don't like him and I don't like her. So, out. That would be okay? That case may come up. I'm just asking would that be okay under your construction of the statute? I don't care. So it would be okay because I'm representing a trustee who was removed. I want you to answer my question. I know you don't care because your client is over here. I'm trying to understand where on the continuum the Attorney General's authority gets cut off and then what's the basis for that? It may very well be cut off because it's arbitrary and capricious because it's not given for any reason. It's given because the wind was blowing bad that day and I don't like this person because she's got blonde hair and somebody else has got braids. That might be a bad example because it would implicate other considerations. I'm having the same problem with the downsizing hypothetical you gave. I'll take your downsizing hypothetical and put you right back in the position for the moment of two trustees from opposite administrations and the trustee that is removed in the downsizing of the United States Trustees Office happens to be of the opposite political party. Aren't we right back to square one again? Where's the authority on this continuum that Judge McEwen talks about? That's a different example. No, it's not because you took the downsizing and pointed out to us the distinction and now I'm giving you the devil's choice of choosing between the two and if I remove somebody, if I'm the administration from the opposite party, aren't I accused of the same thing? Well, when you say that you're doing it due to a change in presidential administration, that's a different animal. Okay. I can't make a choice, though. I've got two people I've downsized and I just happen to pick the person on the opposite party. We have no evidence of downsizing in this instance at all. We have no evidence that it was for purposes of downsizing. No, you used the example, so I just wanted to follow up on it. My point, the point that I'm making, is that here we have a change in a U.S. trustee due to a change in presidential administration, which is a political decision in an area where there ought not to be political decisions. Now, there have been cases before the U.S. Supreme Court involving similar offices. X. Rael Humphrey is one involving the Federal Trade Commissioner, where they want to remove the person for political reasons. Another case is that we need to. Let's stop at Humphrey's then, because in that case, FTC commissioners, and I may think this may be true with FCC as well, but FTC commissioners, there's a statutory provision that you can remove, you can only remove them for, like, malfeasance, neglect of duty, inefficiency, et cetera. So if you remove them for some other reason, you've violated the statute. We don't have that little phrase in the trustee statute, do we? Well, in this case, in Humphrey's case, it was removed because it was a choice and the President wanted someone more to his liking, not to cause some malfeasance. So the case addresses the political question. The point is, though, and maybe you can help me out on this, in that case, Congress said, I guess it would be the President in that case, Congress says to the President, you can only remove people from their statutory term for these reasons. What? Those reasons don't include political reasons. In our case, we don't have any statutory limiting language. So explain to me why you think that Humphrey's would counsel to your result here. Well, the reason is because in Humphrey's, it is my recollection of the case in this case, in our brief, is that the commissioner was removed for political reasons. Correct. And that the question of what the refinements, the limitations imposed by the statute were, as I remember the case, didn't play a significant part. In Wiener, the other case we cited, which was a member of the War Crimes Commission, and I think it was President Eisenhower, or it may have been President Roosevelt, one of them, President Roosevelt, couldn't have been, removed him because he wanted a refinement to his choice. But in that case, there was no removal authority by statute, correct? I don't remember any removal authority by statute. But some removal authority would always be implied. But he was removed for political reasons. And the court said that that would be inappropriate. You might want to save the rest of your time because we've kind of whittled it down on you. All right. Thank you. May it please the Court. The decision of the district court should be affirmed for two reasons. First, Ms. Stanley has failed to present a culpable constitutional claim within the district court's jurisdiction. And second, she should be collaterally stopped from the Federal – by the Federal Circuit's decision. On the jurisdictional issue, let me just be candid and clear about it. We have clearly changed our positions here based upon briefing in the Supreme Court in the Whitman case, which was also from this Court. And the United States no longer intends that there's a broad preclusion rule provided by the CSRA to exclude all claims, including culpable constitutional claims. How do you – you know, I read your letter and your brief with interest. How in the Ninth Circuit, even though we've not necessarily taken on Webster directly, would this panel be able to come to the conclusion you urge, which is you need a culpable claim to have jurisdiction and there isn't one when we've said or appeared to say that there isn't jurisdiction in the constitutional realm? Well, I think the Court is in a bit of a difficult position, but I think that you can just decide it based on the fact that there's no culpable constitutional claim here. And you don't have to reach the broader question of if she did have a culpable constitutional claim, would the district court have jurisdiction? The First Circuit in a case I believe cited in our briefs called Pathak v. Department of Veterans Affairs took the very same tack and said we're not sure whether the CSRA provides jurisdiction or precludes jurisdiction for culpable constitutional claims, but the claim here is not culpable. So therefore, we affirm the dismissal for lack of jurisdiction. This panel – By the way, one of the cases you cited in your supplemental brief is American Federation of Government Employees v. Hawley. Depending on this Court, does that involve the same question? That's the brief. I think that's the supplemental brief. Does that case involve the same question as this case? Yes. It involves a very similar question. There's a different statute issue there, but it involves the same question of what this Court should do with its broad preclusion rule given the government's commitment concession. Yes. Has that case been argued, do you know? No. That brief was just submitted in August. So we don't have final briefing in that. There's a reply brief due? That's – yes, that's my understanding. The reply brief may have been submitted by now, but it certainly hasn't been set up for argument yet. The briefing was just – the briefing by the United States was very recently submitted. But yes, it raises the identical question about preclusion. The statute there is not the CSRA. It's the TSA statute, but it has the same kind of basic principles of whether a comprehensive regulatory scheme that doesn't explicitly exclude colorable constitutional claims does or not under Webster. So if she – if she had made a claim that her firing were based on – were gender- or sex-based firing, and that were a colorable claim, then we would have to decide the jurisdictional issue, is that correct? Yes, Your Honor. If Ms. Stanley had made a colorable constitutional claim, then I believe the Court would be confronted with its – what we believe is very clear precedent of Veidt and Saul and Blankenship and the like, saying that the CSRA broadly precludes even constitutional claims. But the claim she makes, I mean, there's a certain appeal in it. You get a 5-year term, like, now you see it, now you don't, is the problem, because you have it until you don't have it. So what – why even have a 5-year term? Well, I think it's a presumptive 5-year term, that Congress decided that the U.S. trustee should serve for 5 years, and at the end of the 5 years, a decision about reappointment could be made, but they also explicitly included an unfettered removal provision that gave the Attorney General discretion to remove during that 5-year term. Our reading is the only one that reads both of those together by providing a presumptive 5-year term, along with very plain language of a removal power that's not limited. But Ms. Stanley's – I'm sorry – Ms. Stanley's reading would have this Court read in some type of limitation on that removal authority in 581C that Congress not only didn't put there, but took out of a previous version of the statute. Congress clearly knows how to enact statutes that have 5-year terms and that place limitations on the removals. If Congress had wanted a statute where the U.S. trustees could only be removed for cause, could only be removed for malfeasance, could be removed for whatever reason Congress wanted it limited to, they could have enacted that statute. In fact, in the pilot program, they did. But what good does the presumption do you, I mean, in other words, if you're trying to argue your case and you've been removed, why would you even need a presumption if there's absolute authority for removal? I'm not sure I quite understand your question, Your Honor. You say that we read in a presumption, but what good does that do you if you can be removed for any reason? What good does the presumption do you if you're a trustee? Well, I don't think there is any presumption. With this removal provision – I thought – maybe I misunderstood you. I said – I thought you said you – to read the statute sections together, you read in a presumptive 5-year term, but then absolute removal. Maybe I misunderstood. All I meant with what I said about the presumptive 5-year term is that Congress decided they should serve for 5 years at the outermost limits before being subject to a determination on reappointment. But then – so they just put a cutoff date, clearly, that would allow U.S. trustees to just not be renewed. But they also chose to give the Attorney General a removal clause during that term. Yes, it does in a way make the 5-year term not as meaningful as it would if you had a removal only for cause provision. But again, Congress knows how to make a 5-year term where you can only be removed for cause or malfeasance or the like. They didn't do that here. In fact, they – as I've said, as our briefs say, they specifically took that for cause provision away from the pilot program. And, first, we think the language of 581C and B together is plain. But even if it's not plain, if it's ambiguous, the legislative history clearly has to be read to show Congress's intent to remove that for cause limitation from the Attorney General's power. Ms. Stanley would have you read some kind of limitation back in. Apparently not a for cause limitation, an even more specific limitation of not being removed for political reasons. I mean, as I understood, the argument is all the way across the continuum, the Attorney General would have authority, but you can't just do it for bald political purposes. That's their argument. Because otherwise, you basically undo the 5-year term. If Congress had wanted to enact a statute that said that, then it could have enacted that in plain language. It did not. It chose to enact a removal provision that has no limitations on it. And to read otherwise would be contrary to basic principles of statutory construction. Normally, I'd be hesitant to ever interfere with the clear intent of Congress. But in looking at the United States Trustee's office, it is so significantly different than the United States Attorney's office. Because the US Trustee's office can be perceived to be an arm of the bankruptcy court, an integral part of our system. And therefore, your opposition argues that this is a separation of powers argument. How do you respond that this is not truly a separation of powers problem for the court, when this is far different than the United States Attorney, where I would not intrude, but where the US and trustee is part of our bankruptcy system and the district court system or the court system? Well, I think if there really were a separation of powers problem, the separation of powers problem wouldn't be with the removal clause. It would be with the fact that the Attorney General of the executive branch were appointing these US trustees as opposed to the bankruptcy court. Within the very structure, yes. You have executive branch officials appointing US trustees rather than the district courts or the bankruptcy judges or the like. That hasn't been argued and that hasn't been found. I think once, if it's constitutional for the Attorney General to make the appointment, then it's certainly constitutional for Congress to give them removal authority and to delineate that removal authority however they want to. If that's true, isn't the end result mass chaos in a sense? Every change of administration can make a clean sweep. And isn't that to the detriment of the efficiency of the trustee in the Federal courts? Well, I think then the question then is the discretion the Attorney Generals are going to use in exercising authority to give them by Congress. And if it is mass chaos, then it's Congress's choice to go back and write a statute with more limited removal authority if it finds that it doesn't work properly. There's no evidence. So in essence, these would be patronage positions then? I mean, that's basically where we end up. If that's the way that the Attorney General wants to exercise his or her discretion, there's no – there's been no argument that there's been widespread removals for political reasons like – It's a patronage system that you're advocating, and that's fine. Well, let me be clear, Your Honor. I'm not advocating patronage system. I'm advocating my reading in the plain language of Congress, which could lead to that. I don't think it is right now, but certainly Congress has created a structure that that could lead to. If they want to change it, yes, it's Congress's responsibility, not this Court's to read in a limitation that Congress chose not to put there. So the only – would the only limitations on the Attorney General's authority be legal limitations such as discrimination on the basis of religion, sex, et cetera? Would that be the only limitation? Any other statute that – Or some statutory – I'm a little intimidated because I'm not quite sure whether Title VII actually covers the U.S. trustees. I believe it does. I believe that one time the Stanley actually had some kind of EEO complaint pending. But to the extent Title VII covers U.S. trustees, then yes, she certainly could pursue that avenue. Title VII doesn't cover all employees in the federal government, I believe. There are some portions that are excluded and covered by other statutes. But, yes, to the extent there's another statutory remedy available to her, like Title VII, she would have a remedy there, and that would necessarily limit the Attorney General's discretion. But no other reason that wasn't put in either 581 or in some other statute that covers the positions of U.S. trustees. That's correct. There's no limitation in 581C. Therefore, her claims of violation of due process and a violation of separation of powers simply are not colorable claims within the district court's jurisdiction. And, therefore, the dismissal can be affirmed based upon that more limited reason. And, again, if you weigh through the jurisdictional issues and do decide that the court might have jurisdiction, for the reasons we set forth in our supplemental letter brief, we believe that the Federal Circuit's decision on the same exact issue between the same parties does collaterally stop Ms. Stanley. For these reasons and the reasons in our brief, the district court's decision should be affirmed. Thank you. Mr. Goldenberg. In my rebuttal argument, there was one question you asked me that I'd like to address again, and that was the issue of whether or not the question of jurisdiction was a mixed one in this case. My argument would be that it's not a mixed one, and I point the Court to the Supreme Court decision in the Whitman case remanding Whitman to this Court. In its procuring opinion, the Supreme Court affirmed the decision that the civil civics reform act did not confer jurisdiction, but nevertheless remanded the case to this Court with instruction. The Supreme Court reasoned that another statute, 28 U.S.C. 1331, the statute upon which Ms. Stanley relies upon, grants jurisdictions to Federal courts over all civil actions arising under the Constitution, laws, or treaties of the United States. So the question of jurisdiction can be seen separately from the question of whether or not there is a culpable constitutional claim. With respect to the question of culpable constitutional claim, the Court should not, in fact, consider a Rule 12b6 motion made for the first time on appeal and remand a case to the district court for a determination if a motion is made at that time to dismiss under Section 12, under Rule 12b6. And it would be in the interest of judicial economy. It would be in the interest of fairness to the parties to do that, Your Honor. But the question of jurisdiction can be seen separately from whether or not there is a culpable constitutional claim. Are there any other questions for me? I think not. Thank you very much. I'd like to thank both counsel for your arguments. It's a very interesting case. The case of Stanley v. Gonzalez will be submitted.
judges: Tashima, McKeown, Carter